SCOTT M. LOWRY, ESQ. (CA Bar No. 244,504)
E-Mail: Scott@LawLB.com
STUART O. LOWRY, ESQ. (CA Bar No. 80,336)
E-Mail: Stuart@LawLB.com
LOWRY BLIXSETH LLP
23632 Calabasas Road, Suite 201
Calabasas, California 91302
Telephone: 818-584-6460
Facsimile: 818-574-6026

Attorneys for Plaintiff
R. THOMAS CANNARELLA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| R. THOMAS CANNARELLA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>VOLVO CAR USA LLC, a Delaware limited liability company, GREY GLOBAL GROUP INC., a Delaware corporation, THE BIG PICTURE COMPANY, a Delaware corporation, 1ST AVENUE MACHINE USA, INC., a New York corporation, SCPS UNLIMITED, LLC, a California limited liability company BOB PARTINGTON, an individual; and DOES 1-10,<br><br>Defendants. | Civil Action No. 2:16-CV-06195<br><br>**COMPLAINT FOR DAMAGES BASED ON:**<br><br>1. **Patent Infringement under 35 U.S.C. §§ 271(a) and 281;**<br>2. **Contributory Patent Infringement under 35 U.S.C. §§ 271(c) and 281;**<br>3. **False Advertising under 15 U.S.C. § 1125(a);**<br>4. **Unfair Competition under 15 U.S.C. § 1125(a) and Cal. Bus. & Prof. Code §§ 17200 and 17500** *et seq.***; and**<br>5. **Common Law Unjust Enrichment.**<br><br>**DEMAND FOR JURY TRIAL** |

R. Thomas Cannarella ("Plaintiff") hereby pleads his complaint for patent infringement, contributory patent infringement, false advertising, unfair competition, and common law unjust enrichment against Defendants Volvo Car USA LLC, Grey Global Group Inc., The Big Picture Company, 1st Avenue Machine USA, Inc., SCPS Unlimited, LLC, and Bob Partington (collectively "Defendants"), as follows:

## JURISDICTION AND VENUE

1. This civil action arises under the laws of the United States, Title 35 United States Code, particularly §§ 271 and 281; the Federal Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended (the "Lanham Act"); and California Business & Professions Code §§ 17200 and 17500 *et seq*.

2. This court has original jurisdiction over the parties and the subject matter of the action pursuant to 28 U.S.C. §§ 1131 and 1338(a)-(b), as well as under 15 U.S.C. §§ 1121. This court also has personal jurisdiction over the Defendants because the Defendants are doing business in this state and/or the alleged acts of infringement have occurred and/or are occurring in this state.

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1400(a)-(b). The alleged acts of infringement and misappropriation have occurred and/or are occurring in this district and some of the Defendants reside within this judicial district.

## PARTIES

4. Plaintiff R. Thomas Cannarella ("Cannarella") is an individual having a residence of 112 Hollingshed Creek Blvd., Irmo, South Carolina 29063.

5. Upon information and belief, Defendant Volvo Car USA LLC ("Volvo") is a Delaware limited liability company having its principal place of business at 1 Volvo Drive, Rockleigh, New Jersey 07647.

6. Upon information and belief, Defendant Grey Global Group Inc. ("Grey") is a Delaware corporation having its principal place of business at 200 Fifth Ave., New York, New York 10010.

7. Upon information and belief, Defendant The Big Picture Company ("Big Picture") is a Delaware corporation having its principal place of business at 79 Madison Ave., Suite 1210, New York, New York 10016.

8. Upon information and belief, Defendant 1st Avenue Machine USA, Inc. ("1st Avenue") is a New York corporation having its principal place of business at 231 Front St., 4th Floor, Brooklyn, New York 11201.

9. Upon information and belief, Defendant SCPS Unlimited, LLC ("SCPS") is a California limited liability company having its principal place of business at 2807 Oregon Ct., Torrance, California 90503.

10. Upon information and believe, Defendant Bob Partington ("Partington") is an individual having an address at 231 Front St. 4th Floor, Brooklyn, New York 11201.

## FACTUAL BACKGROUND

11. Plaintiff Cannarella is a Professional Engineer (P.E.) and has, over the years, been Leed AP licensed in states that include New Jersey, Pennsylvania, New York, Connecticut, South Carolina, North Carolina, Virginia, Georgia, Maryland, and Delaware. Furthermore, Cannarella has about 10 years invested in the field of green energy engineering and related technologies and over 20 years in civil, geotechnical, and environmental engineering and design.

12. Cannarella graduated from the University of Delaware with a Bachelor's Degree in Civil Engineering with an Environmental Concentration in 1992 and, immediately after college, worked for the United States Environmental Protection Agency (EPA) in the Office of Clean Water working on special projects that included developing a model to prioritize the cleanup of pollutants. In addition,

Cannarella worked for Land Surveyors and Environmental Specialists as a crew chief for a team involved in performing environmental investigations and site assessments; and as a Geotechnical and Environmental Field Engineer working at heavy construction sites performing both investigative and inspection services for various types of transportation and development projects relating to utility planning and design, geotechnical studies, and hydrogeologic testing and evaluations.

13. In 1999, Cannarella received his professional engineering license and founded the engineering firm Goodland & Clearwater and held the position of Chief Operating Officer (CEO) for approximately eight years until the company was sold to a larger full-service engineering firm in 2007. Goodland & Clearwater specialized in public facilities and educational developments. After a successful merger, Cannarella started another engineering firm and later worked for national engineering firms helping to start-up and revive offices.

14. Cannarella is currently the founder and CEO of R. Thomas Engineers, a Green Engineering and Consulting Firm started in 2007 specializing in alternative green energy designs and project/program consultation.

15. In this respect, Cannarella is a LEED Accredited Professional, a Member of the U.S. Green Building Council, and has been a member of the American Society of Civil Engineers ("ASCE") for over 24 years. Cannarella has worked on nationwide green energy programs that include solar, wind, and fuel cells. He has been a member of design teams for start-up alternative energy companies such as Bloom Energy, Omniwind, Solular, and has worked on design teams for global companies such as Walmart, Sam's Club, and Travel Centers.

16. Cannarella is no stranger to research and development of new alternative energy products and business development related to start-up energy companies.

17. In view of his civil engineering background and technical experience working and consulting on green energy technologies, Cannarella recognized that

there was a potential to generate and store clean energy from intermittent pressures existent in the environment, such as from automotive travel.

18. Accordingly, Cannarella invented processes and systems that generate and store clean energy based on the concept of using a renewable and low or no cost energy source to produce a constant and sustainable electrical energy output supply. Cannarella realized that fluid is one of the most readily available natural energy resources that can be replenished without damage to the environment. As such, Cannarella began work on a system that harnesses energy created by the peristaltic compression of fluid by, for example, a vehicle passing over one or more flexible tubes subjected to the pressure created by the vehicle. The compressed fluid could then be used to operate a pneumatic motor or be stored in a tank for later use in energy generation.

19. In this respect, Cannarella is the sole inventor and sole owner of the entire right, title and interest in and to United States Patent No. 8,232,661 ("the '661 Patent") entitled "System and Method for Generating and Storing Clean Energy", which issued on July 31, 2012 as part of the United States Patent and Trademark Office ("USPTO") Green Technology Pilot Program. The '661 Patent is presumed valid and enforceable under 35 U.S.C. § 282. A true and correct copy of the '661 Patent is attached as Exhibit A.

20. The '661 Patent is generally directed to a system for generating and storing clean energy, and may include a flexible body externally exposed to an intermittent localized pressure; a first check valve coupled to the flexible body and configured to facilitate unidirectional fluid flow into the flexible body and a second check valve coupled to the flexible body and configured to facilitate unidirectional fluid flow out from the flexible body; a substantially rigid and planar base positioned adjacent the flexible body and opposite the intermittent localized pressure, the flexible body being of a shape and configuration to facilitate pressure point peristaltic expansion and compression cycles along a portion thereof

responsive to the intermittent localized pressure to cause positive fluid displacement into and out from the flexible body through the first valve and the second valve, respectively; and an energy generation system in fluid communication with the flexible body configured to generate electrical energy from pressurized fluid resultant from the peristaltic expansion and compression cycles (hereinafter "Cannarella Clean Energy System").

21. In about 2011, Cannarella created a schematic video demonstrating some of the features of the Cannarella Clean Energy System, and uploaded the video to Vimeo on about August 2, 2011 (https://vimeo.com/27227239) under the Title: "Vehicle/Roadway Application of the BNC Charger". Cannarella has further created detailed proof of concepts for multiple embodiments of the BNC Charger (including a roadway embodiment), financial forecasts and schedules, prototype, fabrication and beta site testing estimates, and has compiled a board of advisors from nationwide entities and obtained letters of interest from multiple large scale buyers. These efforts have been made to further design and manufacturing of a commercial version of the Cannarella Clean Energy System. Cannarella, along with his consultants, advisors, and team, have dedicated countless and valuable time and money to procure the '661 Patent, develop his business plans, establish goodwill among his peers in the clean energy industry, and connect with partners and venture capitalists, all in an effort to commercialize his technology.

22. In the first quarter of 2016, Cannarella was finally gaining traction with multiple potential partners and venture capitalists willing to invest/partner in the Cannarella Clean Energy System. At that time, Cannarella was being considered by multiple investors for investment in amounts sufficient to build and test a full scale commercial prototype of the Cannarella Clean Energy System.

23. Although, on about April 12, 2016, Cannarella was informed of a commercial made by the Defendants featuring a peristaltic generation system nearly identical to the Cannarella Clean Energy System, and which falls within the

scope of one or more claims of the '661 Patent (hereinafter "Infringing Energy Generation System). The Defendants uploaded the commercial featuring the Infringing Energy Generation System to YouTube on about April 6, 2016 (https://www.youtube.com/ watch?v=c4x0w7juhtw) under the Title: "Highway Robbery | Volvo XC90 T8 Twin Engine Hybrid" (hereinafter "Highway Robbery Commercial"). In this respect, Cannarella was informed of the Highway Robbery Commercial less than a week after its release.

24. Cannarella contacted Volvo by email in an effort to speak directly with those who conducted the research and/or the development of the Infringing Energy Generation System in hopes of being able to commercialize the Cannarella Energy Generation System and/or the Infringing Energy Generation system. Volvo never responded.

25. Instead, Cannarella received a phone call from Grey's attorneys about the second week of April 2016. Cannarella re-conveyed his interest in speaking with Volvo and those who designed and developed the Infringing Energy Generation System for purposes of further commercial development. Grey's attorney never provided Cannarella with any substantive information; only that Cannarella would be contacted by the "creator's" attorney.

26. In early May 2016, the "creator's" attorney was informed of Cannarella's desire to seek out a working relationship with Volvo and/or the individuals and/or entities involved in the design and development of the Infringing Energy Generation System.

27. But, the "creator's" attorney refused to entertain any such working relationship, refused to entertain any exchange of substantive information, and refused to provide the contact information for those individuals and/or entities involved in the design and/or development of the Infringing Energy Generation System, absent Cannarella agreeing to a blanket release of the Defendants from any and all liability related to infringement of the '661 Patent.

28. Nearly a month later, in early June 2016, with discussions stalling as a result of the above-identified refusals, the "creator's" attorney turned negotiations over to a patent attorney apparently representing one of the Defendants.

29. Again, Cannarella re-conveyed his interest in developing a working relationship with Volvo and/or the entities and/or individuals involved in making the Highway Robbery Commercial. But, again, the Defendants' patent attorney insisted that Cannarella execute a blanket release before the Defendants would be willing to "share" any information with Cannarella.

30. By about June 2016, and after two months of discussions, it was becoming increasingly clear that the Defendants had no desire to work with Cannarella, but would prefer litigation in lieu of collaborating to develop green energy technology that could beneficially help the environment. Even so, on June 15, 2016, Cannarella made yet another request to determine whether Volvo would have any interest in establishing a working relationship with Cannarella to develop the technology shown in the Highway Robbery Commercial. The Defendants, again, never responded to Cannarella's request.

31. Instead, the Defendants were more interested in discussing damages and the validity of the '661 Patent.

32. Cannarella attempted to try and amicably resolve the present case with the Defendants over the next two months from about June 15, 2016 up to the filing of the present Complaint.

33. Upon information and belief, the Infringing Energy Generation System was made in Torrance, California by SCPS. Specifically, SCPS states on its website that they "produced the entire system . . . . [and] delivered and operated the system on set . . . ." SCPS also admits that the Highway Robbery Commercial went "viral" on the internet. A true and correct copy from the SCPS website is attached hereto as Exhibit B.

34. The Highway Robbery Commercial states that the Defendants ". . . HIJACKED A HIGHWAY IN CALIFORNIA".  Upon information and belief, the Infringing Energy Generation System was used on a highway in Lancaster, California where the Highway Robbery Commercial was filmed.

35. Cannarella's contacts expressed concern to Cannarella about the development of the technology depicted in the Highway Robbery Commercial, especially given its backing from Volvo.  Since the release of the Highway Robbery Commercial, interest from Cannarella's partners/investors has significantly slowed down at the detriment of Cannarella's fragile start-up business and efforts to commercialize the Cannarella Energy Generation System. Moreover, Cannarella's additional contacts have since largely ceased corresponding with Cannarella over the last 4+ months since the Highway Robbery Commercial was released.

36. Meanwhile, the Highway Robbery Commercial has and continues to receive significant publicity, such as by way of still being marketed to large audiences directly on the Volvo website, YouTube, Facebook, etc.  On YouTube alone, the Highway Robbery Commercial received over 1.65 million views (or approximately 15,000 views a day) as of August 1, 2016.  A true and correct copy of the YouTube page is attached hereto as Exhibit C.

37. Partington also promotes the Highway Robbery Commercial on his Twitter account.  A true and correct copy of the Twitter page is attached as Exhibit D.

38. Thus, the Defendants have all received a financial windfall, green energy exposure, commercial recognition, publicity, and a competitive marketing advantage and market penetration, as a result of misappropriating technology they had no right to use.  The Defendants have, therefore, been unjustly enriched as a direct result of the unauthorized exploitation of the technology claimed in the '661 Patent, an enrichment the Defendants continue to enjoy today.  As a natural

consequence, this has all been to the irreparable detriment of Cannarella, his reputation, and his business.

39. Partington is identified in the Highway Robbery Commercial as the so-called "Innovation Architect" of the Infringing Energy Generation System. Upon information and belief, Partington speaks at technology conferences and claims for his own the Infringing Energy Generation System technology. For example, Partington was the keynote speaker at STEM-tastic Saturday on May 14, 2016, where his biography included a statement that "Bob's most recent invention is featured in Volvo's "Highway Robbery" ad for their new electronic car." A true and correct copy of the STEM-tastic ad regarding Partington's speaking engagement is attached hereto as Exhibit E. Upon information and belief, Partington was paid to speak at STEM-tastic based at least in part on his association with the Infringing Energy Generation System. Cannarella has had active funding opportunities through STEM for the Cannarella Energy Generation system, including by way of well known venture capitalists.

40. Upon information and belief, Partington did not invent the Infringing Energy Generation System depicted in the Highway Robbery Commercial. Rather, Partington falsely states on his Facebook page that he is the "inventor" of the Infringing Energy Generation System. A true and correct copy of the Facebook page is attached as Exhibit F. Furthermore, upon information and belief, Partington has not filed a patent application for any technology related to the Infringing Energy Generation System.

41. Moreover, Andreas Dahlqvist, Grey's chief creative officer, falsely stated in an interview with AdFreak that "[Grey] ended up developing [their] own proprietary hydraulic system from scratch, and it proved to be incredibly efficient at generating electronic power." A true and correct copy of the statement quoted by AdFreak is attached hereto as Exhibit G.

42. Consequently, the consuming public now incorrectly associates the Infringing Energy Generation System as, *e.g.*, "a custom peristaltic pump" created by the Defendants. *See, e.g.*, Exhibit H. These false statements discredit Cannarella and his technological achievements, and are in wanton disregard for the fact that Cannarella invented the technology in the Highway Robbery Commercial, as indicated in the '661 Patent.

43. Moreover, Defendants state that "SOMETIMES STEALING CAN BE A GOOD THING" in a video Entitled: "Highway Robbery | Behind The Scenes" uploaded to YouTube on April 8, 2016 (https://www.youtube.com/watch?v=pDLRl6PvEMk), which features the Infringing Energy Generation System (hereinafter "Behind The Scenes Video").

44. Upon information and belief, the Defendants knew of the '661 Patent prior to making the Highway Robbery Commercial or the Behind The Scenes Video, at least in view that the Highway Robbery Commercial and the Behind The Scenes Video show and reference layout and equipment virtually identical to the layout and equipment disclosed in the '661 Patent.

45. Upon information and belief, one or more of the Defendants endeavored to make, use, offer to sell, sell, or otherwise import into the United States a commercial version of the Infringing Energy Generation System.

46. Although, upon information and belief, after attempting to build the Infringing Energy Generation System, the Defendants discovered that the Infringing Energy Generation System did not work as intended. The Infringing Energy Generation System could not generate enough energy to fully charge the Volvo XC90 T8 Twin Engine Hybrid in the manner represented in the Highway Robbery Commercial. Despite this, the Defendants state in the Behind The Scenes Video that they have "CREATED A TECHNOLOGY TO POWER THE FUTURE".

47. Thus, upon information and belief, the statements in the Highway Robbery Commercial and/or the Behind The Scenes Video are false and are being disseminated throughout marketing channels such as the Volvo website, YouTube, Facebook, and other online and social media, to propagate the false and misleading notion that the Defendants created a viable and working technology whereby vehicle batteries could be reliably charged by cars passing over a peristaltic energy generation system.

48. Accordingly, upon information and belief, the Defendants have no calculations, no evaluations, no analysis, no data or calculations from field tests, permits, design documents, specifications, user manuals, parts lists, or other engineering information to substantiate the claims made in the Highway Robbery Commercial or in the Behind The Scenes Video.

## **FIRST CAUSE OF ACTION**

(Patent Infringement)

(35 U.S.C. §§ 271(a) and 281)

49. Cannarella re-alleges and incorporates by reference the allegations set forth in paragraphs 1-48 above.

50. Upon information and belief, Defendants have been and/or currently are directly and/or indirectly infringing the '661 Patent by making, using, offering to sell, selling and/or importing the Infringing Energy Generation System.

51. Cannarella is informed and believes and based thereon alleges that Defendant's acts of infringement have been willful.

52. Defendant's infringement of the '661 Patent will continue unless enjoined by this Court.

53. As a direct and proximate cause of Defendant's infringement of the '661 Patent, Cannarella has suffered, is suffering, and will continue to suffer injury, unless enjoined by the court, for which Cannarella is entitled to damages adequate

to compensate for the infringement pursuant to 35 U.S.C. § 284, of an amount to be proven at trial.

54. As a direct and proximate consequence of Defendant's infringement of the '661 Patent, Cannarella has suffered, is suffering, and will continue to suffer, unless enjoined by the court, irreparable harm for which there is no adequate remedy at law, and for which Cannarella is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## SECOND CAUSE OF ACTION
(Contributory Infringement)
(35 U.S.C. §§ 271(c) and 281)

55. Cannarella re-alleges and incorporates by reference the allegations set forth in paragraphs 1-54 above.

56. Cannarella is informed and believes and based thereon alleges that third parties have used Defendants' Infringing Energy Generation System that infringe one or more claims of the '661 Patent.

57. Defendants have contributed to infringement of the '661 Patent by others and continues to contribute to such infringement by at least making and using the Infringing Energy Generation System, such that others directly infringe the '661 Patent, as described above.

58. Cannarella has been and will continue to be injured as a result of Defendants' contributory infringement.

## THIRD CAUSE OF ACTION
(False Advertising)
(15 U.S.C. § 1125(a))

59. Cannarella re-alleges and incorporates by reference the allegations set forth in paragraphs 1-58 above.

60. Defendants' Highway Robbery Commercial and/or Behind The Scenes Video constitute a false advertisement under 15 U.S.C. § 1125(a) that misrepresents the nature, characteristics and qualities of the Infringing Energy Generation System, and/or is designed to deceive a substantial segment of consumers into believing that the Defendants have successfully made and used a peristaltic energy generation system that can reliably charge the Volvo XC90 T8 Twin Engine Hybrid.

61. On information and belief, the Infringing Energy Generation System built by the Defendants cannot reliably charge the Volvo XC90 T8 Twin Engine Hybrid, such as in the time suggested in the commercial, and the Defendants otherwise have no calculations, no evaluations, no analysis, no data or calculations from field tests, design documents, specifications, user manuals, parts lists, or other engineering information to substantiate the claims made in the Highway Robbery Commercial and/or in the Behind The Scenes Video.

62. This deception is material in that it has, upon information and belief, influenced, and will continue to influence, consumer purchasing decisions regarding Defendants' products and services, and to the detriment of Cannarella.

63. As a result of Defendants' false and misleading advertising, Cannarella has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial. Cannarella has no adequate remedy at law for such injuries and thus, Cannarella is entitled to a permanent injunction against further false and misleading advertising.

## FOURTH CAUSE OF ACTION

(Unfair Competition)

(15 U.S.C. § 1125(a) and Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq*.)

64. Cannarella re-alleges and incorporates by reference the allegations set forth in paragraphs 1-63 above.

65. Defendant's false and misleading advertising constitute unfair competition in violation of Cannarella's rights under 15 U.S.C. § 1125(a) and the common law of unfair competition of the State of California, causing injury to Cannarella and his business, relationships, reputation, and goodwill. Defendants' conduct also constitutes deceptive and unfair competition under the statutory laws of California under Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*

66. As a result of Defendant's false and misleading advertising, Cannarella has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial.

67. Defendant has acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure Cannarella. As such, Cannarella has no adequate remedy at law for such injuries and is thus entitled to a permanent injunction against further false and misleading advertising under Cal. Bus & Prof. Code. § 17203.

### FIFTH CAUSE OF ACTION
(Common Law Unjust Enrichment)

68. Cannarella re-alleges and incorporates by reference the allegations set forth in paragraphs 1-67 above.

69. As a result of Defendants' misappropriation of the '661 Patent and false and misleading advertising, the Defendants benefit from increase sales, profits, market share, consumer base, reputation, and goodwill, especially in the arena of green technology, all to the detriment of Cannarella, his reputation, and his business.

70. As a result of Defendants' misappropriation of the '661 Patent and false and misleading advertising, Cannarella has suffered and will continue to suffer irreparable and monetary damages in an amount to be determined at trial.

71. Defendants knew, or reasonably should have known, that the increased sales, profits, market share, reputation, consumer base, and goodwill they received resulted directly from their misappropriation of the '661 Patent and literally false, deceptive, and misleading advertising. Defendants have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure Cannarella and his business. Cannarella has no adequate remedy at law for such injuries and thus, Cannarella is entitled to a permanent injunction against further misappropriation of the '661 Patent and false and misleading advertising.

## **PRAYER FOR RELIEF**

WHEREFORE, Cannarella requests entry of judgment in its favor and against Defendants as follows:

a. That Defendants have directly and/or indirectly infringed one or more claims of the '661 Patent;

b. Preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from any infringement of the '661 Patent whether direct or indirect;

c. That Defendants account to Cannarella for damages by virtue of Defendant's infringement and/or contributory infringement of the '661 Patent;

d. Award Cannarella all damages, in such amounts as are proved at trial, and in an amount adequate to compensate Cannarella for the infringement, resulting from Defendants' infringement and/or contributory infringement of the '661 Patent, pursuant to 35 U.S.C. § 284;

e. That Defendants be adjudged to have willfully and deliberately infringed and contributorially infringed the '661 Patent;

16
COMPLAINT FOR DAMAGES
Case No. 2:16-CV-06195

  f. That the present case be judged an exceptional case within the meaning of 35 U.S.C. § 285 and that Cannarella be awarded its reasonable attorneys' fees and costs pursuant thereto;

  g. That Cannarella be awarded damages in an amount equal to three times the amount of damages found or assessed, to compensate Cannarella for the willful and deliberate acts of infringement by Defendants, pursuant to 35 U.S.C. § 284;

  h. That Defendants deliver to Cannarella the Infringing Energy Generation System in a fully operational condition as portrayed in the Highway Robbery Commercial;

  i. Order that Defendants and their parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with them, or any of them, offer up to Cannarella all parts, systems, information, and data related to the Infringing Energy Generation System falling within the scope of one or more claims in the '661 Patent, including, but not limited to, the conception, design, development, engineering, specifications, materials and material sourcing, manufacturing/construction, assembly, testing, raw data, calculations, evaluations, analysis, permits, and claims made in the Highway Robbery Commercial and/or the Behind The Scenes Video, that are within Defendant's possession, custody or control;

  j. That Defendants publish a corrected commercial video identifying Cannarella as the inventor and that the Infringing Energy Generation System falls within the scope of the '661 Patent, along with a written letter identifying Cannarella as the inventor of the technology shown in the Highway Robbery Commercial; and

  k. For any such other and further relief as the Court may deem just, proper, and equitable.

# **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Cannarella respectfully demands a trial by jury on all claims and issues so triable.

Respectfully Submitted:

Dated: August 17, 2016         */s/ Scott M. Lowry*
Scott M. Lowry, Esq.
Stuart O. Lowry, Esq.
Lowry Blixseth LLP
23632 Calabasas Road, Suite 201
Calabasas, California 91302
Telephone: 818-584-6460
Facsimile: 818-574-6026

Attorneys for R. Thomas Cannarella